## No. 4380.

### PETER DYER vs. PETER RIELEY AND THOMAS P. LEATHERS ET AL.

The mate of steamboat Natchez was not acting within the scope of his employment at the time he committed the offense complained of in this case, and the plaintiff, who was employed as a roustabout on said boat, and who suffered in consequence of the alleged offense, cannot recover against the Natchez for the damages sustained by him in consequence of the offense.

Masters and employers are answerable for the damages occasioned by their servants. in the exercise of the functions in which they are employed. This responsibility, however, only attaches when they might have prevented the act which caused the damages, and have not done so. Revised Code, article 2320. But this case, as disclosed by the record, does not come within the provisions of said article of the Code.

APPEAL from the Fifth District Court, parish of Orleans. *Leaumont,. J.* Jury trial. *John M. Bonner* and *J. W. Kerr,* for plaintiff and appellee. *Randolph, Singleton & Browne,* for defendants and appellants.

WYLY, J. Plaintiff alleges that on the twenty-second day of January, 1871, while he was employed as a roustabout on the steamboat Natchez, the mate of said boat, Peter Rieley, while acting within the scope of his duties and without any fault of plaintiff, threw a pine knot at plaintiff, which struck him in the eye and put it out; he, therefore, sues the defendants, Peter Rieley, Thomas P. Leathers, and Anthony Pauley, the mate and owners of the Natchez, for twenty thousand dollars damages.

The court gave judgment on the verdict of a jury against all the defendants for five thousand dollars damages.

From this judgment Thomas P. Leathers and Anthony Pauley, the owners of the Natchez, have appealed. Peter Rieley, the mate, has not appealed.

Shortly after the boat left Baton Rouge on the day mentioned in the petition, plaintiff, with two other employees, was going from the bow toward the stern of the boat, on the starboard side, when a pine knot was thrown from the boiler deck and struck plaintiff in the eye, causing the injury which resulted in its loss. It is charged that Peter Rieley,

the mate, threw this pine knot, one of the witnesses testifying that he looked up about the time it was thrown and saw him. This occurred about five o'clock in the morning, while it was quite dark, the night being unusually dark.

Another witness declared that, immediately after the occurrence, he went upon the boiler deck and found Peter Rieley and saw a pile of pine knots near him, and this witness testified also that he committed the offense.

The theory of plaintiff's counsel is that the mate was on watch and was prepared to throw these pine knots at any one he supposed was tampering with the whisky barrels, which were stowed near where the plaintiff was struck; that on a previous trip the barrels had been bored into and a considerable amount of whisky had been stolen; that the deckhands had been threatened by the mate and also by the captain; that while the mate was thus on watch with his pine knots ready, he discovered plaintiff and two other men standing near the whisky barrels, and, suspecting that they were about tampering with these barrels, he threw the pine knot which caused the injury to plaintiff.

He contends that the mate was on watch guarding this whisky, and that he committed the crime while acting within the scope of his employment, and, therefore, the appellants, the owners of the boat, are responsible. He develops this theory by the following argument, which we copy from his brief:

" The mate was clearly acting within the scope of his duties when he committed the act which injured the plaintiff. Common carriers are responsible for the safe transportation and delivery of all goods intrusted to their care. Hence, it becomes their duty and the duty of their employees to guard and protect all freight on their vessels. To perform this duty more effectually watches are established. Consequently, whatever is done by an officer on watch in the way of guarding and protecting the freight is done within the line of his duty. Captain Leathers had retired to bed just before the boat reached Baton Rouge. The mate was then called and took charge of the boat. He landed the boat at Baton Rouge, and just above this point the mate, thinking some of the crew were about going into the whisky barrels, threw the pine knot that knocked out the plaintiff's eye. Whisky had been abstracted on the previous trip of the boat, and the mate was on the lookout for a repetition of the offense. Captain Leathers said in the presence of the crew that stealing whisky had to be stopped, and the mate threatened the crew with broken heads on this account. The captain and the mate, therefore, put their heads together to devise some means to stop the stealing of whisky. The boiler deck overlooked the main deck where the whisky was stowed on the guards, and this was the point from which

they kept a lookout with their pile of pine knots. These pine knots were placed there for the purpose of protecting the whisky, and Captain Leathers must have known the fact, for it is very improbable that the mate had pine knots carried up to the boiler deck at the hour in the morning when he was called, just below Baton Rouge, to go on watch. But, be this as it may, the mate was on watch at the time he threw the pine knot, and it matters not whether he did the act with Captain Leathers' consent or knowledge or not. He was in the performance of his duty of keeping guard over the freight on the boat when he did the injury, and his employers are responsible for the consequences of his act. The mate chose the throwing of pine knots as a means of carrying out his orders to guard this whisky, and the owners are responsible for his negligence or imprudence in making such a selection."

Now, the error of this argument lies in assuming as facts certain assertions which are wholly unsupported by evidence.

There is not a particle of proof that the mate had orders to guard the whisky, or that he was put on duty as a watchman, or that he and the captain put their heads together to devise some means to stop the stealing of whisky, or that the throwing of pine knots was chosen by the mate as the means of carrying out his orders to guard the whisky.

Peter Rieley, the mate, was on watch, that is, he was on duty as mate. He was not the watchman of the boat. At the time plaintiff received the injury there was a regular watchman on duty on the main deck. There is not a particle of evidence that it is part of the usual duties of a mate to guard the whisky or to throw pine knots from the boiler deck to the main deck. And, as before remarked, the mate received from the captain no special orders to perform this duty. The captain not only gave no such orders, but he was in utter ignorance of the whole affair.

The captain was master of the boat. The act was not done under his orders or with his knowledge or consent. And the duties of the mate, in this regard, were no greater from the circumstance that the captain had retired to bed.

Our conclusion is that the mate was not acting within the scope of his employment at the time he committed the crime; and the plaintiff, who was employed as a roustabout on the steamboat Natchez, cannot recover against appellants, the owners of said boat, for the damages sustained by him in consequence of said offense. Masters and employers are answerable for the damages occasioned by their servants "in the exercise of the functions in which they are employed." This responsibility, however, " only attaches when they might have prevented the act which caused the damages and have not done so." Revised Code, 2320.

The authorities cited by plaintiff, to wit: Wharton on Negligence, par-

agraph 171; 46 N. Y. 23; 12 Allen 52; 50 Mo. 104; 11 American Reports 405; 21 Ohio 518; Shearman and Redfield on Negligence, paragraph 65, and 17 Wallace 557, all proceed on the theory that the act of the servant is done within the general scope of his employment. This is good law, but the case disclosed by the record does not come within the provision thereof.

It is therefore ordered that the judgment herein against Thomas P. Leathers and Anthony Pauley, the owners of the steamboat Natchez, be set aside and annulled, and, as to them, that plaintiff's demand be rejected with costs of both courts.

The Chief Justice dissents, and reserves the right to file his reasons hereafter.

Rehearing refused.