(44 South. 275.)

No. 16,513.

JANES v. WILSON, Town Marshal.

(June 10, 1907. On Rehearing, June 29, 1907.)

1. FALSE IMPRISONMENT—ARREST—LIABILITY OF OFFICER.

An officer who makes an arrest on the sole authority of a telegram from a private person does so at his peril.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Imprisonment, §§ 29–31; vol. 4, Arrest, § 149.]

2. SAME.

One who, without first ascertaining whether a crime has been committed, causes another to be arrested, acts at his peril.

[Ed. Note.—For cases in point, see Cent. Dig vol. 23, False Imprisonment, §§ 5–31.]

(Syllabus by the Court.)

Appeal from Fourth Judicial District Court, Parish of Lincoln; Robert Brooks Dawkins, Judge.

Action by J. S. Janes against J. H. Wilson, town marshal. Judgment for defendant, and plaintiff appeals. Reversed, and judgment rendered against defendant.

John Henry Mathews, for appellant. Price, Roberts & Warren, for appellee.

PROVOSTY, J. Plaintiff sues J. H. Wilson, town marshal of Ruston, and S. J. Taylor, for false imprisonment.

As plaintiff got off of the morning train at Ruston, he was arrested by Wilson, on a telegram sent by Taylor, and was marched to the mayor's office, where he was held a prisoner. Wilson placed him in charge of a deputy constable, and went off. This deputy, during the absence of Wilson, chained plaintiff, by fastening to his ankle a chain, the other end of which was fastened to the floor. In this condition plaintiff remained for over two hours. When Wilson returned, he did not disapprove of the act of the deputy, or disclaim responsibility for it, though he knew of it.

It is admitted that the arrest of plaintiff was groundless, and that the only question is as to whether the appearances against plaintiff were not such as to excuse the course that was adopted towards him.

Plaintiff is by trade a barber, and he has no fixed abode, but dwells wherever he finds employment. Some three months before the arrest, he had found employment in the defendant Taylor's barber shop at Winnfield. A few days after plaintiff had come into the shop, Taylor went to New Orleans, leaving plaintiff in sole charge of the shop, with the right to keep all the earnings. Taylor's absence continued until the Saturday preceding the Monday on which plaintiff was arrested. Plaintiff had written to him that he (plaintiff) wanted to go to Hot Springs. Taylor and plaintiff worked in the shop at their trade on the Saturday of Taylor's return. When they left the shop that night, Taylor

locked the door as usual. He and plaintiff were good friends. Taylor had every confidence in plaintiff. Plaintiff was owing Taylor $1.75, which Taylor had lent him some three months before to buy a hat. Between the time of his parting with Taylor on the Saturday night and the Sunday afternoon, plaintiff made up his mind to leave on the next morning, Monday, by the early train, which passed at 6 o'clock. At about 5 o'clock on the Sunday afternoon, he went to the shop to get some clothes he had there and his barber's tools. The shop was a kind of storehouse, with a back room and a front room, and the barber shop was in the back room. The front door was a double door, fastened by a bar inside. Plaintiff entered the back room by opening a window and lifting a sash, and, after having taken his things, went out by the front door and merely pushed it to, without putting on the bar. He spent the night at his boarding house as usual, and the next morning took the 6 o'clock train.

When the defendant Taylor got to the shop on the Monday morning, he found the front door open, and found his own barber's tools in a towel near the back door, which was not their regular place, and found plaintiff's tools and clothes gone. Upon inquiring, he ascertained that plaintiff had left on the early train.

Without taking time to make sure whether anything had been stolen, he jumped to the conclusion that plaintiff had burglarized the shop and made off. He consulted the sheriff, who told him to consult the district attorney. He rang the district attorney up on the phone, but that officer was not at home. It was then about 8 o'clock, the time when the train was due at Ruston, at which place plaintiff might have a choice of trains for getting away if minded so to do. Thereupon Taylor, without more ado, sent to Wilson the telegram to arrest plaintiff, and Wilson, getting the telegram only a few minutes before the train was due, did not know any better than to arrest plaintiff, in the manner above stated, on the sole authority of the telegram from Taylor.

Taylor found that nothing had been stolen from his shop, and, after consulting with the district attorney, sent a telegram to release plaintiff, and Wilson did so.

It must be admitted that the circumstances were a little suspicious. The shop appeared to have been burglarized. Plaintiff had departed without bidding good-bye to his associate in business. Taylor's tools had been removed from their regular place, as if by some one who had had a notion to carry them away. If plaintiff was to be apprehended at all, it would have to be done on the arrival of the train at Ruston, and the train was about due at that place. To make even a hasty inventory of the effects in the shop for ascertaining whether anything had been stolen would have taken more time than was available, if plaintiff was to be apprehended at Ruston. The record leaves no doubt that both Taylor and Wilson acted in perfect good faith.

But they acted without warrant of law, and must pay the penalty. The liberty of the citizen, even of the humblest, is sacred, and especially must the citizen not be subjected to the indignity of a chain without due warrant of law.

Plaintiff claims $2,000. Under the circumstances, we think the fourth of that will do justice.

It is therefore ordered, adjudged and decreed that the judgment appealed from be set aside, and that S. J. Taylor and J. H. Wilson, defendants, be condemned in solido to pay plaintiff, J. S. Janes, $500, with legal interest from this date, and that defendants in solido pay the costs of this suit.

## On Rehearing.

PER CURIAM. The judgment heretofore handed down in this case is set aside as against S. J. Taylor, and is reduced to $250 as against J. H. Wilson, and as thus changed is reaffirmed, and a rehearing is refused.